of Internal Revenue, Mr. Leiden for the imbalance, Mr. Schuman for the appellee. Good morning, counsels. Mr. Leiden, please proceed when you're prepared. Good morning, your honor. May it please the court, my name is Edward Leiden. I represent both the Mr. and Mrs. Smith. Mrs. Smith is, use a different name, but Mr. Martha Smith and George Lackner are married and have been for many years. This, as the court knows, is a case that arises from the tax court through the court's jurisdiction to hear cases arising from the tax court. It centers to a great, almost, I think, predominant extent on the admissibility of certain substantiating documents. As the record reflects, we really have two tranches of tax years in question, although they are sequential for reasons that probably don't bear on this um earlier on. 2008, 2010, and 2011 were added on because notices of deficiency were issued at different times. These cases were then consolidated for trial and a trial did commence before Judge Lauber in September of 2013. At that time, Dr. Lackner, who was the primary participant in this, Mrs. Smith did not spend very much time on this and was not particularly involved with negotiations or discussions with the IRS, submitted to the court four boxes, banker boxes, full of copied receipts and canceled checks and things along this, these lines, and really, frankly, would have been difficult for the court to sort through. Judge Lauber, not surprisingly, said go back and fix this. Now, what's interesting is from Dr. Lackner's perspective, and Dr. Lackner, as the record reflects, has had a cinematic life. He's a world-renowned psychiatrist. He's taught at Harvard, Yale, George Washington, Columbia, and around the country. He's also been a colonel in the United States Army, was on the VA, and before that emigrated from Hungary after having participated in the 1956 uprising against Soviet rule. It's a background that is, as I think, cinematic is the best way to describe it. He takes the position now, in his later years of his life, and all this occurred while he was in documents, the ones for 2007 and 2009, to the IRS through its Office of the Taxpayer Advocate, and only received them back just before the September 2013 trial date. That was what he provided to the court at that point. Subsequent to that, I entered my appearance for purposes of that point in that issue, for which statutory notices of deficiency weren't issued until February of 2014, and I entered my appearance and filed a petition for those years and asked for consolidation with the other years, as much as they're sequential, and they deal with common issues and makes perfect sense as a matter of the judicial economy. Those other years, 2008, 2010, and 2011, were also the subject of documentary evidence that Dr. Lackner, again, through his own testimony, submits he had already turned over to the revenue agent in question, but that which he contends he never received back. We have a classic question of credibility, and... To the... Yes, he testified to that at trial, that he had... In the government, through its... You don't have a citation for that? It's in the brief, Your Honor. It was as a matter of trial testimony, when Dr. Lackner testified during the tax court trial. All the 2008, 10, and 11 documents, corroborating documents to the revenue agent, and his... That's what he believes happened, and that's what he testified to. In fairness, the revenue agent said that that didn't happen. And as a practical matter, that may not make much difference in the bigger scheme of things, because that's really the avenue of relief that we see. I think Judge Labra was quite correct in saying that a trial judge is not set up and shouldn't be expected to conduct what is, on original documents or copies of original documents. That's not what I'm asking about. I'm asking about the argument at the end of your brief, that there was somehow something sort of went wrong on the IRS end here, because all these documents that they say they need were turned over to the agent. Was that legal argument presented to the tax court? You said he mentioned it in his testimony. It was a legal argument that... We did not know, Your Honor, because what we had asked for at that point was for leeway to present those documents for Dr. Lackner, who testified as well, I should add, said he didn't keep copies of the documents that he gave to the revenue agent to go back and recreate those documents. What he had said he did was tape them onto eight and a half, 11 size sheets and make copies of them. And he was going to go back and do that again. At least that's what he told the tax court when he testified to do it. But we did not make a legal argument that there was some malfeasance or other untoward conduct on behalf of the government in this case. And the relief we're simply seeking is to be able to bring those documents forward, those substantiating documents. And the reason we say this is that there's a process to do that very thing, albeit at the site, 2016-22, which came down March 23rd, 2016, provides a process by which that could happen, which is in fact probably the most logistically feasible thing to do would be to bring this down to appeals where a subsequent examination of these documents could occur. And that would be the substantiation. You either have background documents or you don't. In this instance, the government has taken it. Is there anything in the record that shows that he did turn these down? I know you said his testimony. Did he have any substantiating documents about any of these documents? No, Your Honor. He didn't have a receipt. He didn't have anything on the order of some kind of a confirmation note or anything from the revenue agent. And in all fairness, in the interest of full disclosure, the revenue agent's own case notes, which were admitted, I believe, as 55R, don't reflect that encounter either. So in terms of where we're coming from here, we would not base our case on any misconduct on the part of the IRS. I don't think we need to go there, and I would be very reluctant to go there, knowing the revenue agent in question, having worked with this agent before, and knowing the honorable nature of the IRS, having worked with the IRS for 30 years. I don't believe that that is a necessary analysis for this court or the tax court to do. I believe there is... I was going to say about the payments that were coming from the VA, not the settlement one, but the other, I guess there were... 104A4, Your Honor. Yes, the ones that... Please, let me just describe it here so you can tell me what I've got wrong. So I thought there were some monthly payments, although maybe I read somewhere it was only five months' worth of payments that came from the VA. Can you explain to me, were these monthly payments that went on for some prolonged period of time or just for five months? And then what your best argument based on the record is that those were either, I guess, a disability or pension payments that would be excluded, based on record evidence? They are recurring. The nature of... Are they constantly? They are, yes, on a monthly basis. It was a disability pension that Dr. Lackner was provided. Were these monthly payments made? I'm sorry, say again, Your Honor, I didn't quite hear you. Over how long a period were these monthly payments made? They were commenced, I believe, in 2010. And from what I know, they continue still. Okay. That this was... And the reason was because Dr. Lackner had been wounded in Kosovo, or on strike in Bosnia, and that this was in relation to the disabilities that he suffered as a result of that. And under 104A2 of the Internal Revenue Code, those types of payments are categorically held to be exempt from taxable income because of the nature of income. And that's what's distinct from 104A2. It's limited to military members or people in the armed services, which of course Colonel Lackner, or Dr. Lackner, he was a bird colonel in the army, wounded in the course of combat to which he was entitled. And so there was no... But you don't have any documentation even over these years from the IRS? Do they... Or not the IRS, excuse me, the VA, do they not issue sort of any annual statements just explaining the payments? I have not seen such a statement from my client, Your Honor. And I'm not sure that that would actually answer the question. What we had argued at trial was that because these, at least the way we characterize them, and what Dr. Lackner was led to believe through a social worker would be tax-free, that would mean that they would never be reported to the IRS. That was the argument we made there. In other words, by virtue of the IRS own instructions regarding 1099 mis-issuance, that at least for 104A2 and by extension 104A4, that the IRS, the payor in any instance, the government, the VA or in any other payor for these purposes, is not required. And in fact, is discouraged from issuing a form 1099, which we use as the explanation of why the government wasn't aware of these payments in the first place. When I say the government, I mean the IRS as opposed to the VA, why they weren't aware of it because there was no statutory reason for them to be so aware. There was no notice because these were non-taxable to the recipient and hence never entered gross income. Thank you. I'd be glad to have Judge Cervantes and Judge Henderson, any questions you have, I'd be more than glad to try to answer them. No. None for me, but thank you, Mr. Layden. We'll hear from Mr. Schuman now. Good morning and may it please the court. My name is John Schuman and I represent the Commissioner of Internal Revenue. Before I begin my larger outline, I'd like to start with two of the questions that arose from Mr. Layden's presentation. One of which had to do with whether these documents for 2008, 10 and 11 were given to the revenue agent and then supposedly not returned. There was some testimony about that at trial and specifically it's at the appendix pages 310 and 311. Mr. Layden explained to the tax court that they did not have substantiation at the time to document that these were disability payments and not some taxable income instead. What monthly payments does the VA issue to a retired service member on an ongoing basis that are not disability or pension? They don't just give out money for some other category that I'm aware of. If they do, let me know because my husband's retired and I'd like to get the money. Yes, you're absolutely right about that, Your Honor, but that's just it though. There wasn't really a showing that these were monthly payments that continued indefinitely in the same amount. There were actually larger payments. These were amounts that again coincided with the same time frame as the settlement with and that were not non-taxable. I had thought the record show from your, not your personally, but from the IRS's, what do you call it, the bank analysis that they had identified and it was confusing to me how long the period was, but apart from the settlement payments, they had identified a pattern of payments from the VA. Now I had read somewhere and thought it was only five months, but Mr. Layden says it was ongoing from 2010. Did you find an ongoing, explain to me what they found, put the settlement payments aside. There's a separate category here of VA payments that was found, as I understand it, through the bank deposit analysis. Is that what you were saying was in different amounts? Was that ongoing or was it limited to a short period? Well, the record is not crystal clear on this amount. The revenue agent did say that there were a series of payments, but it's not clear that they were the same amount every month that continued on. This is the Veterans Administration and you've got someone who's I just don't know what, on what possible basis you think the VA is making taxable payments to a retired service. What, if you could just tell me something in the law that the VA pays that's taxable to former service members in a series of payments over months, that would help me, but I'm having trouble imagining what that payment could possibly be except for one of the two non-taxable categories. Well, the revenue agent did look into that and tried to determine that and was not able to determine that it was a non-taxable payment. Is there any such thing in your experience, in the IRS's experience, I mean your personal history, in the IRS's experience that the VA, this is what, this is what's baffling to me. I just don't know what the VA pays. He wasn't, he wasn't an employee at the time, so I don't know what they would pay on a recurring basis other than something that falls within the tax exempt category to a former service member. Can you, do you, are you aware of anything that they pay that's not a service member on a monthly basis, recurring monthly basis that's not, that is taxable? Well, it could have been related to the settlement because it was in the same time frame and those payments were not necessarily made all in lump sums. Now, some of them were, but some of them weren't and there were different categories of them together. Do we know that these were just settlement payments? Well, he was definitely paid the settlement payments, but they weren't all in one payment and I guess what I would go back to is that it's the, for the proven deduction or an exclusion from income, the taxpayer has the burden of showing that these were non-taxable in nature and there was simply no documentation of this, although if it had been disability payments, I'm certain there would have been some documentation from the end. But the IRS did preliminary sort of very minimal showing and then the burden shifts to the taxpayer. Is that not what the statute says? Correct, yes. We did show that the income had come in and then it was up to the, as it was presumed to be taxable and then it's up to the taxpayer to show otherwise, that it's in a non-taxable category and here there was simply no documentary evidence. There was no substantiation whatsoever, nothing that would convince the tax court. Just one quick question. When you said, when you say it was presumed to be taxable, you mean it was presumed to be taxable because there was documentation that showed that these amounts were added to the bank account? Yes, it was part of the bank deposits analysis. Yes, your honor. And then that creates, the way this works is that creates an assumption that it's taxable income and then the burden is on the taxpayer to show that even though there was money deposited in the bank account that that was actually non-taxable. Right, right, that's correct, your honor. And I just want to clear on one thing that you, because I had thought, and this could be my error completely, I had thought that there were sort of two categories of VA payments here that were at issue. One was a set of payments that was the settlement agreement, but that there, I had thought there was a separate argument that there were these other payments from the VA that recurred on a monthly basis. It wasn't clear to me how long they repeated, but they occurred on a monthly basis that were distinct from the settlement agreement. Are you saying I'm incorrect in understanding it that way from the briefing that in fact, we don't know if there were any VA payments separate from the settlement agreement? Well, the problem here is that in 2010, there were a number of payments from the VA and taxpayer, even though he had the burden to do so, did not provide substantiation of what was what. So it was up to the revenue agent to try to figure that out without really any cooperation from the taxpayer. And he, he, he tried to do that and tried to determine if there was evidence that these were non-taxable, but he was unable to find that. Can you do a bank deposit analysis for 2011? Yes. Were there monthly VA payments in 2011? I'm not certain of that, Your Honor. I mean, the retired military colonel, as we've been told, who presumably would be getting some sort of retirement benefits from the VA. Is that right? I mean, the government doesn't dispute his retired, or do you? The IRS doesn't dispute his retired status as a former military officer? No, I believe we stipulated to his, his retirement from the Army. And so he would be getting some monthly payments, would he not? Either disability or pension? Well, that's what, you know, the revenue agent asked the taxpayer. That's what the revenue agent was trying to determine, and again, did not receive any cooperation, and so had to try to figure it out for himself. And he did not find that evidence, and the tax court, and the factual finding determined that the, the substantiation was, was not sufficient. This might be a crazy argument. Does the, because y'all are one government, does the IRS ever ask the federal agency what the basis for payments are? Is that any part of an IRS inquiry like this? I don't know if that's a routine part of the process. Ordinarily, the revenue agent is getting information from the taxpayer. That's the first source. That's the horse's mouth. So that's, that's where they get it. In this case, the whole reason you were doing the bank deposit analysis is you weren't getting much from the taxpayer, and I'm just easily, and since he's a former retired, since he's a retired service member, I should think the IRS would be aware that it's likely that he's getting pension or disability payments from the VA, and so just to sort it out, wouldn't it have been, there may well be a reason. Please tell me why, but wouldn't it have been to this non-IRS person here? It would have been probably a logical and pretty easy thing to do is just ask the VA. Well, we did have information about the settlement and about the non-taxable items, but again, we, you know, there was no cooperation from the taxpayer here, and the commissioner's determination of tax liability as set out in the notices of deficiency are presumed correct under case law, and taxpayers have the burden of proving them erroneous. So they had, they had that burden as well as now in this court, the burden of showing that there's a definite and firm conviction that this factual finding by the tax court was a mistake, and I submit that he cannot meet those burdens. The other item I was going to discuss regarding the case was that on the taxpayer testified at trial that he could have regenerated these documents from 2008, 2010, and 2011, and he simply didn't do so, didn't submit it to the court. So we have their ability to submit these documents, but not the fact of them having done so, and I see my time has expired. I'm happy to answer any further questions or present a broader picture of the case than these two elements. There was in the, in all the assorted receipts, there were some utility bills for Connecticut and California. Why is a utility bill from a state in which you reside, but in which you have a rental property, not a relevant, the bill itself, relevant evidence of a payment, a deductible income payment? Your Honor, this was, this item was not raised by taxpayers on appeal in this court, and I think they've waived all objections to the specifics of this, but we did address this in tax court in the respondent's answering brief after the trial, and we went through each and every element of the deductions for those years that were claimed, including utilities, and indicated why they could not, why there was a lack of substantiation as to each one of those items. Since it wasn't specifically briefed by them, do you recall what the rationale for the utility bills was? Your Honor, I could, I could look that up in our, in our brief below, because we certainly did address all of that, you know, line by line and item by item. I don't recall exactly what it was for the utilities. If you could. That's okay, that's okay, that's fine. It's perfectly understandable that you said they didn't, they didn't raise a specific argument. Thank you. Make sure my colleagues don't have any further questions for you, Mr. Schuman. Okay, thank you, and I ask that the decisions of the tax court be affirmed. Thank you, Mr. Schuman. Mr. Layden, we'll give you two minutes for rebuttal. Very well, Your Honor, thank you. I'll just try to answer some of the questions that Judge Millett raised, and also to address Mr. Schuman's point as regard to out-of-state expenditures. Mr. Schuman is quite correct that in 2010, there were some of the payments for disability were lump-sum payments. There were make-up payments in that, in that period that then became monthly afterwards. And that was a reason why some of that was in amounts that weren't recurring at that point. It was that these were made up, making up for past periods that had not been covered for whatever reason, Dr. Lackner had not received them. So that explains, I hope, or at least addresses the nature of the payments. In terms of these out-of-state expenditures, along with all of the rental expenses, that's sort of our point. And I we did raise it to the extent, I know in the briefs we talked about that these were places where Dr. Lackner didn't live. We all agree he lives in D.C. And so to characterize them as the service did, as being personal expenses, just didn't make sense. But at the end of the day, what this boils down to is there are records here. No one, because they've been described as being disorganized, has really looked at them. No one at this level, certainly not the level, certainly at the trial level, should have to. That's why we have an appeals office, and that's why we have revenue agents. So what we're asking for as relief is the opportunity to have someone take a look at this. Now, as respect to the point as to why these 2008 through 2011 receipts were not issued, we asked for the court's permission to do that. That record, the tax code record shows that we did make that request before the court's final determination and were denied. That's the reason they were not submitted, because the court would not grant us leeway to open the administrative record to receive those documents. Again, I thank you. I'll be more than glad to answer any questions. Just in conclusion, we would ask the court to reverse the tax court and to submit for, at our point, the remedy we seek is referral to the IRS Office of Thank you, Counsel. Thank you to both counsel. We'll take this case under submission. Thank you, Your Honor.
judges: Srinivasan, Henderson, Millett